**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

CLARICE J. TRAWICK,                     :
                                        :
          Plaintiff,                    :
                                        :
vs.                                     :          1:05-CV-010 (WLS)
                                        :
GEORGIA DEPARTMENT OF                   :
TRANSPORTATION, et. al.,                :
                                        :
          Defendants.                   :
                                        :
_____:

**ORDER**

          Before the Court are Defendants' Motion for Summary Judgment. (Doc. 27) and

Plaintiff's Motion for Summary Judgment. (Doc. 32).  For the following reasons, Defendants'

Motion for Summary Judgment (Doc. 27) is **GRANTED**; and Plaintiff's Motion for Summary

Judgment (Doc. 32) is **DENIED**.

**DISCUSSION**

**I.       BACKGROUND**

          Plaintiff brings the above-captioned action against Defendants pursuant to Title VII of the

Civil Rights Act of 1964,  42 U.S.C. §2000e, *et. seq.*, alleging she was subjected to employment

discrimination by Defendants on the basis of her race and gender when Defendant Georgia

Department of Transportation ("GDOT") declined to promote her from her position as Computer

Assisted Design Operator ("CAD Operator III") to Design Engineer ("DE I").  The parties agree

that this court properly exercises jurisdiction over the instant matter and is the appropriate venue.

(Docs. 2, 10).

**II.      SUMMARY JUDGMENT STANDARD**

          Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

1

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised. <u>Allen v. Tyson Foods</u>, 121 F.3d 642, 646 (11th Cir. 1997). A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 248 (1986); *see also* <u>Allen</u>, 121 F.3d at 646. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See* <u>Cleveland v. Policy Management Sys. Corp.</u>, 526 U.S. 795, 804 (1999); <u>Celotex</u>, 477 U.S. at 323.

The movant bears the initial burden of showing that there is no genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323. The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing, or by pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id*. at 324. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or "show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. <u>Celotex</u>, 477 U.S. at 322-23; <u>Allen</u>, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## III.    FACTUAL SUMMARY

The following facts are undisputed by the parties. Plaintiff is an African-American female, who is employed by Defendant GDOT in the Department's District Four Regional Office in Tifton, Georgia.  She has worked for the agency for nineteen years.  Plaintiff transferred to the design department as a Computer Assisted Design Operator II ("CAD II") on January 16, 1997, and was promoted to Computer Assisted Design Operator III ("CAD III") on July 1, 1998.  CAD Operators are modern-day draftspersons who assist in the design of road projects using computer software.  Ms. Trawick was promoted from CAD III to DE I on February 1, 2004 after she filed a Charge of Discrimination on August 12, 2002. (Doc. 27, Exh. 2).

According to Defendants, a promotion from CAD III to DE I is a non-competitive "career path" promotion.  The candidate for promotion does not undergo an interview or a competitive selection process. The candidate must simply have served for a year or more as a CAD III and must demonstrate proficiency in all of the tasks associated with the DE I's more demanding job requirements.  *Id*.  In order to ensure that a candidate for DE I possesses the required proficiencies, DOT has developed a standardized Selection Rating Guide that describes threshold qualifications for the position.  *Id*.  According to Defendants, when a person is being considered for promotion to DE I, his or her Squad Leader must evaluate his or her ability to perform each task described on the Selection Rating Guide. The candidate's proficiency on each identified task is described on a standardized Applicant Rating Form that contains the same tasks that are listed on the Selection Rating Guide.  *Id*.  After the candidate's Squad Leader submits the promotion recommendation, the paperwork is forwarded up the chain of command to the District Design Engineer for review and approval. If the District Design Engineer approves the promotion, then it is forwarded for approval to the District Engineer. If a promotion package for DE I is approved by the District Design Engineer, it is routinely approved by the other individuals in the chain of command.  *Id*.  Plaintiff does not dispute these facts. (*See generally* Doc. 32).

According to Defendants, during the time period from May 1 – June 1, 2001, Plaintiff asked her immediate supervisor, DE I Michael Howell, about a promotion to DE I.  (Doc. 27,

3

Exh. 2).  Plaintiff was not recommended for promotion in 2001.  *See id*.  Plaintiff did not file either an internal or external discrimination claim or otherwise tell anyone at GDOT that she thought she was the victim of illegal discrimination.  *Id*.  On April 30, 2002, Plaintiff asked Pat Gaddy, her Squad Leader, if he would recommend her for promotion to DE I. Gaddy agreed to do so and subsequently submitted his recommendation, which included the required Selection Rating Guide and the Applicant Rating Form. *Id*.

According to Defendants, Plaintiff received a rating of "2" (possesses some aspect of this competency, but below the average level for acceptable performance on this job) on two required qualifications.  *Id*.  When District Design Engineer Jeff Bridges evaluated Plaintiff's promotion package, he allegedly did not approve her promotion for two reasons: first, he had recently reviewed a set of Plaintiff's plans for the first time. The plans she had submitted contained an unacceptable number of errors. Second, Mr. Bridges confirmed with the personnel office that no one had ever been promoted from CAD III to DE I when they were unable to perform any or all of the required tasks.  *Id*.  According to Defendants, Mr. Bridges did not consider Plaintiff's race or gender when he declined to approve her promotion.  *Id*.  Plaintiff does not dispute these facts. (*See generally* Doc. 32).

According to Defendants, when Plaintiff learned that Mr. Bridges was unhappy about the errors he had found in her plans and did not believe she had the necessary skills to be promoted, she met with Mr. Bridges' boss, Joe Sheffield, the Preconstruction Engineer, and told Mr. Sheffield that the errors were not her fault and should not be used against her to deny her the promotion. (Doc. 27, Exh. 2).  Plaintiff allegedly told Mr. Sheffield, and subsequently testified, that the errors remained in the plans when they were submitted to Mr. Bridges for review because her immediate supervisor, Mr. Howell, and her Squad Leader, Mr. Gaddy, were involved in a competitive rivalry about how things should be done, and that neither of them had given her work the proper level of scrutiny before the plans went up the chain of command to Mr. Bridges. *Id*.  According to Defendants, Plaintiff did not complain to Mr. Sheffield, nor later testify, that

4

Mr. Bridges' conclusions about her lack of readiness for promotion were related in any way either to her gender or to her race. *Id*. Plaintiff does not dispute these facts. (*See generally* Doc. 32).

According to Defendants, on July 15, 2002, Plaintiff met with Mr. Gaddy to review her Performance Evaluation for the prior year. (Doc. 27, Exh. 2). During that conference, Plaintiff acknowledged the technical deficiencies in her performance, specifically her ability to design vertical curves. *Id*. This was one of the technical deficiencies that Mr. Gaddy had previously noted when he evaluated Plaintiff's readiness for promotion to DE I. *Id*. During that same conference, Mr. Gaddy suggested that Plaintiff read the job description for DE I. After Plaintiff read the job description, she allegedly told Mr. Gaddy that "there were some areas I could do, some I was familiar with, some I had dealt with, some I never heard of, and some I couldn't experience without being in that position." *Id*. When Plaintiff later testified, she also acknowledged that she lacked several of the threshold qualifications for DE I in July of 2002 when her promotion package was evaluated. *Id*.

On January 22, 2004, Plaintiff's new supervisor, Squad Leader Steve Lasseter, recommended Plaintiff for promotion to DE I. *Id*. On this occasion, Plaintiff's skill level had improved to the point that she met the minimum requirements for promotion and her application for promotion to DE I was approved. *Id*.

According to Plaintiff, she was told by Messrs. Bridges and Gaddy that prior to 2004 she did not qualify for the DE I position according to the job description. (Doc. 32). Plaintiff further alleges, but provides no evidence which could support a finding that "males were being promoted three times as fast [to the DE I position] with the same educational background and with the same/similar weaknesses." *Id*. According to Plaintiff, she was told to produce a set of plans with no errors, which she contends is known to be impossible among draftspersons in her field. *Id*. Plaintiff further notes that she was never reprimanded or ever informed that she was not up to par. In fact, Plaintiff contends that she "always met or exceeded" in every evaluation

period.  *Id*.  According to Plaintiff, Defendant GDOT never offered any assistance to her which could help her attain promotion, including, but not limited to job training.  *Id*.  Defendants do not dispute these facts.  (*See generally* Docs. 27, 33).

## IV.    LEGAL ANALYSIS[1]

In this case, Plaintiff presents no direct evidence of discriminatory intent.  Therefore, Plaintiff must prove her case by satisfying the inferential test as set forth in <u>McDonnell Douglas v. Green</u>, 411 U.S. 792 (1973).  To establish a prima facie claim of discriminatory failure to promote,  Plaintiff must show that: "1) she is a member of a protected class; 2) that she qualified for the promotion she applied for; and 3) that she was rejected.  <u>Walker v. Mortham</u>, 158 F.3d 1177, 1185-86 (11th Cir. 2001).  If Plaintiff establishes a prima facie case, the burden then shifts to Defendants to put forth a legitimate, nondiscriminatory reason for the Defendant's actions.  <u>Texas Dep't of Comm. Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).

"Defendant's explanation must be clear and reasonably specific, some proffered reasons will be legally insufficient to rebut a prima facie case.  For instance, a defendant relying on a purely subjective reason for discharge will face a heavier burden of production than it otherwise would."  *Id.* at 258.   Upon satisfaction of Defendant's burden, the burden then shifts to Plaintiff

---

[1]    The Court notes that Plaintiff proceeds *pro se* in the above-captioned action. (*See* Doc. 1).  The Court further notes that Plaintiff was noticed by the Court of the importance of a proper compliance with the Federal Rules of Civil Procedure and the possible consequences of failing to do so.  (*See, e.g.,* Doc. 15). The Court further notes that Plaintiff failed to properly adhere to procedural requirements for submitting and responding to a motion for summary judgment. Proceeding  *pro se* does not excuse a party from proper compliance with the Federal Rules of Civil Procedure and the Local Rules of this Court.  <u>McNeil v. U.S.</u>, 508 U.S. 106, 1993 (1993); *see also* <u>Members v. Paige</u>, 140 F.3d 699, 702 (7th Cir. 1998); <u>Nielsen v. Price</u>, 17 F.3d 1276 (10th Cir. 1994).  However, "[c]ourts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education."  <u>GJR Investments, Inc. v. County of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998).   In light of these precedents, and having reviewed the parties' submissions in connection with the instant motions for summary judgment, the Court finds that Plaintiff's noncompliance with established procedure does not unfairly prejudice Defendants. Accordingly, the Court will consider Plaintiff's filings as if they had been properly submitted according to the Federal Rules and the Local Rules of this Court.

to show that the articulated reason was merely a pretext for discrimination.  *See generally* McDonnell, 411 U.S. 792.

Here, it is undisputed that Plaintiff is an African-American female.   Accordingly, she is a member of race-based and gender-based protected classes.   It is also undisputed that Plaintiff was rejected for the promotion at issue.

Plaintiff maintains that she was qualified for the DE I position because "[she] continually met and exceeded her PMF and was doing the same work as the males." (Doc. 35).  However, the Court notes, Plaintiff has submitted no evidence which could support her assertions.  *See* Docket *generally*.  The only evidence submitted by Plaintiff which purports to support her assertions is an EEOC right to sue letter.  (*See* Doc. 33, Exh. 1).

Notably, Fed. R. Evid. 803(8)(C) denotes the following as hearsay, but permits the same as admissible evidence:

> Records, reports, statements, or data compilations, in any form, of public offices or agencies setting forth...in civil actions and proceedings...factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of truthfulness.  Fed. R. Evid. 803(8)(C).

The Supreme Court in Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988) held that factually based conclusions and opinions are also included in the scope of Rule 803(8)(C).   However, "public reports, otherwise admissible under Rule 803(8)(C), may nonetheless be excluded in whole or in part if the trial court finds that they are either irrelevant or more prejudicial than probative."  *See* Hines v. Brandon Steel Decks, Inc, 886 F.2d 299, 302 (11th Cir. 1989).

The EEOC right to sue letter submitted in support of Plaintiff's motion contains neither factual findings nor factually based conclusions relevant to the questions before the Court.   In relevant part, the letter outlines the charges Plaintiff brings before the EEOC followed by Defendants' response.  Following the description of the charges presented, each letter makes a finding that the evidence obtained during the investigation supports the Charging Party's assertions without providing any evidentiary support whatsoever for said findings.  (*See* Doc. 33,

7

Exh. 1).  Accordingly, the Court finds that the information contained within the EEOC recommendation letter before the Court is of no probative value and is insufficient to support or respond adequately to Defendants' motion for summary judgment.   Plaintiff has submitted no additional evidence that she was qualified for the DE I position.  She therefore fails to establish a prima facie case of employment discrimination under Title VII.  *See supra generally*, <u>McConnell</u>, <u>Burdine</u>.

As Plaintiff has failed to establish a prima facie case of discriminatory employment practices under Title VII, as a matter of law the Court must grant summary judgment in favor of Defendants.  Accordingly, Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED**; and Plaintiff's Motion for Summary Judgment (Doc. 33) is **DENIED**.

## VI.     CONCLUSION

For the aforementioned reasons, Defendants' Motion for Summary Judgment (Doc. 27) is **GRANTED**; and Plaintiff's Motion for Summary Judgment (Doc. 33) is **DENIED**.

**SO ORDERED**, this ___29th___ day of March, 2006

_____/s/W. Louis Sands_____
**W. LOUIS SANDS, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**